### LIBERTY v. CHAMPION—INTERNATIONAL CO.

(Circuit Court, D. Massachusetts. November 2, 1908.)

#### No. 333.

PATENTS (§ 328*)—INFRINGEMENT—PAPER-DRYING MACHINE.

The Liberty patent No. 629,696, for a lath-carrying device for paper-drying machines, claim 2, which specifies as an element of the combination "hoppers for feeding the said laths," must be read in the natural sense of its terms, and is limited to a machine employing a plurality of hoppers, and is not infringed by a machine having a single hopper.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing.

William Quinby, for complainant.

Burdett, Wardwell & Snow, Burdett & Wardwell, and Alex. P. Browne, for defendant.

BROWN, District Judge. The bill charges infringement of letters patent No. 629,696, granted July 25, 1899, to Saul R. Liberty for an improvement in lath-carrying devices for paper-drying machines. The patentee says:

"My invention relates to improvements in machines for feeding laths for drying paper; and it consists in providing carrying-belts having projections for feeding the laths forward and two or more accumulating supports for feeding the laths to said carrying-belts. It also consists in providing a lath-carrying device with belts having feeding projections formed thereon, lath-accumulating hoppers for holding and feeding out the laths, and a smooth belt for assisting in accumulating the laths in one of the said hoppers. It also consists in certain other novel constructions, combinations and arrangements of parts, as will be hereinafter described and claimed."

The specification states also:

"Lath-carrying devices have been used heretofore which are adapted to feed laths forward for supporting paper which has been colored or provided with some ornamental configurations. Such machines, however, should be provided with means for feeding more than one style of lath to the paper, and should also be provided with means for accumulating the laths at different points for this purpose."

Drying machines for drying coated paper have been in use for many years. The green web of paper, in order that it may be dried, is hung

---

on sticks or slats, which are supported by belts. The wet paper is hung in separate festoons, supported by the slats, and is moved slowly along through a hot room sufficient in length to harden and thoroughly dry the coating. The length of travel of the slats is a hundred or more feet. When the paper has dried it is rolled up, and the slats which have supported the successive festoons, having completed their travel, must be returned in some way to the other end of the drying machine to be used again. Automatic stick-returning mechanism has been in use for many years. It is shown in the patents to Waldron, No. 222,765 and No. 322,871, of 1885, and in the English patent to Jones of 1859. There is also testimony aside from the prior patents to the effect that the defendant's machines are of a type manufactured and put upon the market at least five years prior to the date of the patent in suit. The general combination of carrying belts to carry along the slats while they support the festoons of paper, of belts to return the slats so that they may begin a new travel, and belts for raising the slats so returned to the level required for carrying forward the festoons of paper, was old.

The principal question in this case is as to the construction which is to be placed upon claim 2, the only claim in suit.

"(2) In a lath-carrying device for paper-drying machines, the combination with belts having lugs for feeding paper-supporting slats or laths forward, hoppers for feeding the said laths, a guide interposed between two of the said belts for directing the slats from one to the other, and springs mounted in the said guides preventing the return of the slats and insuring the proper contact of the lugs of the belts with the slats or laths, substantially as described."

The claim uses the term "hoppers." The defendant uses only a single hopper, and his machine is of a construction which antedates the complainant's patent except in the single particular of a spring mounted in the guide between the belt which returns the slats to the front of the machine and the belt which lifts the slats from the front of the machine to the belt which carries them forward while they support the festoons of paper. The question whether claim 2 must be read as calling for two or more hoppers is not a verbal question, but a substantial question. If we read the claim literally, it presents the novelty of two or more hoppers for feeding the laths and of means for feeding more than one style of lath to the paper. The claim so read is not anticipated by the prior art, and is valid but not infringed, since the defendant has only a single hopper incapable of feeding more than one style of lath or of accumulating the laths at different points.

In order to make a device with a single hopper an infringement of claim 2, it would be necessary to disregard what seems to be the most important and characteristic feature of the patent in suit—the double feed. Assuming, however, that there may be a novel combination whether one or more hoppers are used, and that one hopper for feeding the laths is the equivalent of two, so far as the operation of transferring the slats from the lower belt to the lifting belt is concerned, we have to inquire specifically what advance over the prior art is shown by the claim thus construed. Over the prior patents shown in the record there is an advantage in the simpler way in which the slats

are lifted from the lower to the higher level. Both Waldron and Jones have somewhat complicated mechanism for effecting this transfer. The machine of the defendant, which upon the testimony must be regarded as in the prior art, shows a simplification of means for the transfer, and a simpler and less costly device for this purpose than is shown in the prior patents. The patent in suit refers to the feature of a curved guide, but this is of similar construction to that found in the defendant's device. The patent in suit also says:

> "The transfer of the slats from the lower belt to the lifting belt also forms a novel feature of my invention, and produces a simpler and less costly way of accomplishing this result than has heretofore been in use."

This mode of transfer is substantially that of the defendant's device. Considering the prior art as consisting of the prior patents and of the defendant's machine having a curved guide and the same mode of transfer of slats from the lower belt to the lifting belt, the only feature of novelty contained in claim 2 is a spring mounted in the guide to prevent the return of the slats and to insure their proper engagement with the lugs of the belts. By a construction of claim 2 which disregards the double feed by two hoppers, we should be forced to consider whether Liberty by adding a spring detent to the defendant's machine had made a new invention. In view of the fact that it appears in testimony that a number of workmen had equipped the defendant's device with a spring detent from time to time, there is a very serious doubt whether this can be regarded as anything more than such an obvious improvement as would be made by the ordinary mechanic. While it is not impossible in construing combination claims to regard certain elements as of chief importance and as characterizing with their novelty the entire combination, so that great liberality will be exercised in applying the law of equivalents to other features of the combination, yet in view of the fact that without a spring the generic combination is old, of the emphasis placed upon the double hoppers and other specific devices, and the slight emphasis placed in the specification upon the feature of a spring, we think we should be reading the claim in a strained and unnatural way were we to say that it was for a combination characterized by the inventive novelty of a spring mounted in a guide. The only reference in the specification to the spring feature, the use of which is the sole ground for charging the defendant with infringement, is as follows:

> "The guide $g^1$ may be provided with one or more springs, as $g^3$, for causing the slats to be engaged more perfectly by the lugs of a belt, G, and thus insure their being fed forward at the proper time."

Nowhere is this use of a spring detent specifically referred to as one of the inventive, as distinguished from one of the ordinary mechanical, elements of the combination. The patentee describes as the inventive features two or more accumulating supports for the laths and the use of a smooth belt for accumulating the laths in one of the hoppers, and of means for feeding more than one style of lath; but beside the brief reference to the spring which we have quoted, the only other reference is in the following language:

"The transfer of the slats from the lower belt to the lifting belt also forms a novel feature of my invention, and produces a simpler and less costly way of accomplishing this result than has heretofore been in use."

The complainant dwells upon this with particular emphasis, but the exact meaning of the patentee is not clear. He refers to a simpler and less costly way than has heretofore been in use. If he makes a comparison with the devices of the Waldron patents and of the Jones patent, it is quite true that he shows a simpler and less costly way; but comparing the means of transfer with the defendant's it is not a simpler and less costly way than that used in the defendant's machine, which it is conceded is in this particular substantially like that of the complainant. The addition to the defendant's device of a spring detent is certainly not an advance in simplicity or less costly. Possibly it may be an advance in efficiency over the defendant's device, though upon the testimony in the record this is doubtful; but as it is not by a simpler or a less expensive means, it would seem that the patentee's reference to the mode of transfer must be simply to those features shared in common by the complainant's and the defendant's devices, and which are not new with the complainant. As to the importance of the spring detent, the testimony shows that this is not essential to the operativeness of the machine, that its use by the defendant was only occasional, and that the slight defect which led to the use by the workmen of a spring or gravity detent was a minor matter.

The burden is upon the complainant in this case to show that the word "hoppers" in the plural can be read in the singular without doing violence to the general meaning of the claim. To so read the claim we are obliged to hold as immaterial all of the specific features relating to the double feed which the patentee regarded as his chief invention. It would do violence to the specification if we should hold that the spring detent was referred to as a feature in itself sufficient to support claims. Assuming novelty in the use of a spring detent; in the claim this novelty is coupled with another novelty, that of two distinct feeds. It may well have been that the Patent Office considered that the accumulation of such specific features as to feed and as to improved engagement of the slats with the transfer belts was sufficient to support a claim for details in an art in which the generic combination was otherwise old. It should be remembered that the ground upon which the defendant is charged with infringement is a very narrow one. It is not contended that the defendant's machine is an infringement, except when it is used with a spring device or a pivoted dog whose sole function is to permit the stick or lath, as carried along by a tooth on the horizontal belt, to ride up on the guide sufficiently high to clear the lug on the belt and then to prevent the lath from slipping back until the lug on the inclined or transfer belt engages the lath to carry it up for delivery. To construe claim 2 so as to prevent the defendant from equipping an old machine with a familiar mechanical device like a spring or gravity detent seems unwarranted. If this case were to be tried upon a claim modified as the complainant seeks to modify it, by eliminating entirely the double feed, the issue would be whether it constituted invention to add to defendant's older commercial machine a spring detent, in view of the fact that several mechanics independ-

ently had done the same thing for the same purpose. Irrespective of the priority of this addition, the obvious character of this change as the application of a means familiar to ordinary mechanics would seem to be established by the testimony.

Reading the claim as containing a reference to the double hoppers, we are very sure of the invention to which it relates. Disregarding this feature, and reading the word "hoppers," in the singular, we are not only departing from the terms of the claim, but are probably eliminating the chief characteristic which the inventor had in mind when he made his claim. As we have said, the burden of proof is upon the complainant to justify the reading of the word "hoppers" in the singular. The only justification is in the assumption that the addition of a spring detent to the defendant's machine constituted a patentable invention. The grant of the patent is not even prima facie evidence in support of this contention. While the grant of the patent shows that a combination with two hoppers is prima facie patentable, it is not prima facie evidence that the addition of a spring detent to the defendant's device is patentable. I am of the opinion that claim 2 must be read as it stands, and that it calls for at least two hoppers. This is the natural meaning of the terms of the claim itself, and is the natural meaning of the claim in view of the specification.

On the other hand, the complainant's reading is a violation of the terms of the text, and also requires the elimination from the claim of a substantial physical element shown in all the drawings and performing a function additional to that of a single hopper. I am of the opinion that the complainant has failed to show the propriety of the construction for which he contends, and that the court is not required to accept his reading of the claim upon the principle of interpretation that construction should be that which will sustain rather than defeat the patent. The court is asked to substitute for the invention expressed by the terms of the claim, and prima facie valid, an invention not expressed by the claim, and of such doubtful novelty that it cannot be safely assumed that either the Patent Office or the patentee considered it as a sufficient basis for the grant of a patent.

I am of the opinion that the defendant is correct in its contention that the claim should be read in the natural sense of its terms, and is limited to a machine employing a plurality of hoppers, and that the defendant has not infringed, since it has used only a single hopper and not a double feed.

The bill will be dismissed.